Thank you. Last case is Monopoly Hotel Group versus Hyatt Hotels. I'm not as likely to be indulgent with extra time with this last one. If you've got a question, get it in. Mr. Morello. Good morning, Your Honors. It's an honor and a privilege to appear before you today. My name is Angelo Todd Morello. I represent the appellant Monopoly Hotel Group regarding this appeal. Civil case. We know what the case is. Right. So issues are simple on the contract claim. Offer acceptance and consideration, that's what makes a contract. Did that happen in this case? We believe it sure did. Claims are dismissed at summary judgment. I don't see what evidence would support the notion under Georgia law that Monopoly had a contract with Hyatt. Okay. Make a contract, you need an offer, you need an acceptance and consideration over valid subject matter. In this case, the original contract, the deal consisted of a master license agreement to develop Hawthorne Hotels, which is a two-star hotel in North America, in the Middle East as four-star or better. That contract was in 2002. It was a 20-plus page master license agreement, had conditions and the processes for approvals. One of the conditions was, well, there were a couple that are relevant here. One is that the agreement couldn't be changed except as specified in the contract. And the other one that's important, it seems to me, is that there were, well, three maybe, there were no other parties to the contract other than Hawthorne and Monopoly. And then the third one that there was no fiduciary obligation taken on by either party in the contract. Sure. But it's black-letter law that even though you have those provisions in a contract, if the course of conduct exhibits something that deviates from that written contract, that course of conduct will supersede whatever the contractual provisions were originally. In this case, you have the contract in 2002. In 2005, things changed internally for... I'm sorry. But it seems like you want to hold Hyatt to the contract that you had with Hawthorne, except only parts of it, not all of it. But at the same time, you didn't have a contract with Hyatt. Originally, Hawthorne International was responsible for the approvals. Three years into it, they said, hey, you owe us some money. You're in default. We're going to terminate unless you agree to 1234. That's the March 15th letter. Number two was your... Hawthorne says that. No, Mike Levin says it. If you look at the letter... Yeah, and... I don't see where Hyatt ever empowered Mr. Levin to speak for it. Well, Hyatt, in the fact backgrounder, which is in the record, describes this reorganization in which Mr. Levin was an integral part to integrate the U.S. Franchise System brands, working with... But did he ever hold himself out as a representative of Hyatt? And did anything... With the authority to change the contract? And did anything that Hyatt otherwise did somehow convey that he had apparent authority to do that? Mr. Maverick's understanding was that Mr. Flora, excuse me, not Mr. Flora, Mr. Levin was conveying this on behalf of Hyatt. Mr. Levin, at his deposition, said that this condition, that Hyatt would be involved in the approval process, came from Hyatt. Well, actually, isn't what he said was... He didn't know where it came from, although he would... Usually it would come from Hyatt, but he didn't know where it came from. Okay, so then at summary judgment, aren't you supposed to... Isn't the district court supposed to infer, make all inferences in the light most favorable... But that doesn't change the fact that Hawthorne is the only party to the agreement. Well, but what changed in the three years after... To decide whether or not it wanted to include... And so did your client have the ability to decide whether or not it wanted to allow Hyatt to have a bigger role in the approval process? Which, by the way, Hyatt was always involved. Always one out of the three votes was a Hyatt vote. Only starting in 2005. That wasn't the case in 2002. Hyatt had no involvement on the approval process for the first three years the master license agreement was in effect. None. Zero. 2005... That's not my recollection of the facts, but maybe I'm... It would be irrelevant even if it's true. So what? They had no role in the approval process. But Hawthorne could... Hawthorne and Monopoly could agree to involve a third party in the approval process without making that third party a party to a contract. I'm sorry, Judge. Could you... I lost you in the beginning part of that. Hawthorne and Monopoly could agree to involve a third party, a stranger to the contract, to be involved in the approval process without making that third party, that stranger to the contract, a party to the contract. Well, I suggest that's exactly what happened. So the question is... So Hyatt's not a party to the contract. Okay. And I'm not saying that it is. I'm not saying that Hyatt is a party to the master license agreement. It's a separate contract that came in effect as a matter of law based on the... Just by virtue of the fact that they're involved in the approval process does not give rise to a new contract. Well, again, I respectfully disagree on this. Offer acceptance consideration. But there's no offer. That's the problem. There's no offer by Hyatt. There was an offer by Hyatt. It was conveyed by Mr. Levin. And then they accepted the benefits. They accepted the benefits. And what are the terms? Let's just, for the sake of argument... The terms are that they... What are the actual mutually assented to terms of this contract? It's in the letter. But proposals will be subject to strict compliance with the MLA. And what turned out was that they were being denied at Hyatt's hand for invalid reasons as stated in the master license agreement. Doesn't the MLA anticipate that there will be competition by... Sure, but that's not a reason that they were denied. That was never a reason. They were denied for two reasons. One, what you're proposing doesn't comply with the licensor's standards, which is faulty for two reasons. Number one, Hawthorne International had no standards. And number two, my client gave proposed standards for these four and five star hotels, which Hawthorne didn't have. And they were approved by Mr. Levin. Second, they said that what you're proposing, these Taj Mahal type of developments that have commercial and condos, which Hawthorne wouldn't be getting a royalty from because their deal was just to get a percentage on the hotel rooms, those far exceed what is necessary to compete in the market. And the MLA said that you are entitled to develop four and five star hotels and you're obligated to try to convince the consuming public that the highest standards are associated with these Hawthorne Suites hotels. Those are the two reasons given during the tenure, the three-year tenure where Hyatt was controlling the approval process. They never said, you know what? We have some other things. We don't think it's a good fit. They never said that with our brand. Marola, the clock's got you. You've saved seven minutes for rebuttal. Mr. Leon. Good morning. May it please the Court. Your Honor, Mr. Marola started his argument by saying that all he needed to show was offer acceptance and consideration. I think that more needs to be shown and I think Judge Rosenbaum, you hit the nail on the head when you were talking about what is this supposed agreement that Monopoly claims arose from some offer that Hyatt never made. And I'd like to get into that because the parties don't dispute the legal principle that for a contract to exist, they need to agree on all material terms. Absent that, there is no contract. The whole purpose of this supposed contract, according to Monopoly, was to establish an approval committee that Hyatt would participate in that would review Monopoly's proposals. I asked Monopoly at deposition, well, how is this going to work? Could Hyatt take its interest into account in reviewing these proposals? First, it said, absolutely. A couple of minutes later, during the same deposition, completely reversed course. It said, no, Hyatt cannot take its interest into account. That the potential impact that one of its developments might have on Hyatt is not a proper consideration. Before Monopoly changed its mind, I asked it, well, describe for me how the review process was going to work then if the whole purpose of this approval committee was to make sure that Monopoly's developments were aligned with Hyatt's interests. How would it work if the party's interests diverged? It said that was never discussed. In the district court, Monopoly took the position that, well, that's Hyatt's problem. It should have made clear back in 2005 when an offer was conveyed that it knew nothing about that the terms of the contract were clearer. Here it takes a different position. It says, well, that wasn't a material term. I find it difficult to understand how it can take that position when the whole purpose of this contract was supposedly to make sure that the party's interests were aligned. We cited a case in our brief, Your Honor, the Massive v. Mullin case in which an appellate court refused to convey a contract to convey a 20 percent interest in a new corporation because that contract didn't clearly set forth when the interests were going to be conveyed or the structure of the new corporation. Here the very essence of the supposed contract is a mystery to everybody, the plaintiff included. Now, I asked Monopoly about some of the other terms of this supposed contract. First, it took the position in deposition that the contract consisted of all of the terms of the agreement it already had in place with Hawthorne plus whatever was set forth in this March 15th letter. Later in the deposition, it again changed course. It said, no, no, no, it didn't consist of all the terms of the master license agreement. It was just a few that related to the review of proposals plus some provisions of the March 15th letter. This is not the only failure. My problem with this is far more fundamental than that. I just don't see what it is that Hyatt allegedly did that made itself a party to any contract. I agree completely, Your Honor, and I think the district court hit the nail on the head when there is nothing here that shows an offer from Hyatt and there's a couple of things, Your Honor. I'm like Judge Rosenbaum. I don't, I really don't think we get beyond offer. I agree, Your Honor. And getting into, you know, what the terms of this hypothetical contract to me just seems to be all beside the point. Again, I agree, Your Honor. I wanted to simply point out that aside from this complete mystery about what this supposed contract was about, Monopoly didn't even know who the parties to this contract were. When this suit was pending in Gwinnett County, Monopoly took the position that this new contract that it claims arose existed between it, U.S. Franchise Systems, which was Hawthorne's parent, Hawthorne and Hyatt. All three parties were then parties to this contract. When it was refiled in district court, it was just Hyatt. Then in April of 2007, two years after it supposedly entered into this contract with Hyatt, the very purpose of which it now claims was to create this approval committee so Hyatt could look at its proposals, it sent a letter to Hawthorne saying that Hyatt has no right to be on an approval committee to take a look at my proposals. I have no agreement with Hyatt. Five months later, in September 2007, it said the exact same thing. All of the directions coming from Hyatt, but I have no contract with Hyatt. There was no meeting of the minds here, not even close on anything. I think this court's opinion, and I'm sure I'm going to butcher the name, Your Honor, I apologize for that. Areola versus Kimberly-Clark is really right on point. In that case, the court reviewed an alleged contract under which the plaintiff claimed it entered into an exclusive distribution agreement with the defendant. At deposition, one of the plaintiff's owners said that it was going to be exclusive. I came out of the meeting with a clear understanding I was going to have an exclusive contract. Later in the same deposition, he said, well, there was only a possibility of exclusivity. The defendant, for its part, said that, I never even talked about exclusivity. I didn't have the authority to do it. The court affirmed the grant of summary judgment on a claim that a contract arose here because even the plaintiff couldn't explain what the terms of the contract were, let alone a meeting of the minds between the parties on that. And again, I don't think it's really surprising that there was no meeting of the minds here because the contract theory that monopolies come up with is an afterthought. When this suit was originally filed in Gwinnett County, there was no claim that Hyatt had entered into some contract with Monopoly. The only claim that had been pressed at that point was a claim that Hyatt supposedly tortiously interfered with Monopoly's contract with Hawthorne. We briefed a motion to dismiss in which we explained that Georgia law doesn't recognize that claim. A company like a parent company that has an economic interest in a party can't tortiously interfere with that party's contracts. When that motion was filed, all of a sudden, a contract claim appeared in the next complaint. I entered into a new contract with Hyatt. And for the reasons that this court pointed out, that contract simply doesn't exist. If the court has questions about the offer acceptance elements, I'm happy to go into it. I don't think that the fiduciary duty claim really requires much analysis. The contract made clear that it didn't exist. And the parties knew from the very beginning, both from the master license agreement and from the letter that they claimed was the predicate for their contract claim, that the party's interests were going to be adverse. Those are not the hallmarks of a fiduciary duty claim. Yeah. Thank you. Thank you, Your Honors. Mr. Morello. Your Honor, on the offer element that you clearly disagree with our argument here, I mean, I guess I have a rather crude analogy that I think is akin that maybe you'll find persuasive, although we shall see. Suppose you have a situation where you have a landowner that hires somebody to mow their lawn. And you say, okay, we have a three-year contract. You're going to mow my lawn. Here's the conditions. The lawn gets cut whenever it's three inches tall and you take it down to an inch and a half. And however long it grows up, you come back and I'll pay you a hundred bucks every time you do it. You have to use a four. You have to use at least a four horsepower lawnmower, which is a push lawnmower. Okay, great. Those are the terms of the agreement. Grass gets up over three inches and you need my written approval. Grass grows three and a half inches. Hey, it's time for me to mow the lawn. Got my lawnmower here. Okay, great. Mow my lawn. Here's a hundred bucks. Sometime into it, landowner says, you know what? My dad's going to come. He's going to get involved and he's going to be the one that's responsible for giving you the green light to mow my lawn. Dad's great. He's got houses all over the place and I trust him. Will you agree that my dad is the one that's in charge of the approvals? Okay. Turns out dad likes it when the lawns are five inches tall and, you know, disagrees with son, but he's got this written contract that says these are the conditions on which you get to mow the lawn. Landscaper comes up. It's one of those big sit-down lawn mowers. 20 horsepower. Goes to dad, says, hey, I'm ready to mow the lawn. Grass is three and a half inches. Dad doesn't say anything about I prefer it to be five. Why do you need that sit-down lawn mower? You don't need that. That's not necessary. Once you come back and give me written reasons why you need that sit-down lawn mower instead of that push lawn mower. My contract says that it needs to be at least four horsepower. This is at least horsepower and the grass is over. Give me some reasons. Landscaper goes to son. I don't think yet you have a contract with dad. Landmower goes back to the son and says, hey, we got this contract and you're saying I can do this. Son says, I hear you. But you agreed that the approvals are now we're going to go through dad. And dad is the one that's saying, no, for whatever reason, I'm not going to tell you whether I agree or disagree. But we've agreed that I'm not the one that's going to give you the green light. Dad's the one. And then dad does that. You don't have a contract with dad. Well, there was a change in the process. Right. That was agreed to. Dad never said I'll do it. Right. Dad didn't make the offer. But dad did do it, though, right? And dad did do it. Yeah, but that didn't make dad a party to your contract. Dad accepted the benefits. I'm sorry.  How is he benefiting from? Well, again, like I said, this is a crude. This is a crude. And in any case, where is the offer on dad's part? Exactly. There isn't an offer on dad's part, but he accepted the responsibilities. And he's his son's agent. What's that? He's his son's agent. And the son's a party to the contract with the lawnmower. But I don't understand how dad is now a party to some kind of contract with the lawnmower. Just because dad's involved in an approval process. I think it's kind of a fun analogy. To me, it exposes why your argument doesn't work. In this case and in the example, the original contracted party had the responsibility to be the gatekeeper. For whatever reason, those parties to the contract agreed to change it and say, okay, third party, Hyatt, is going to be involved in the process. And that process needs to be reviewed strictly under our written agreement from three years ago. Okay. If they don't, if Hyatt doesn't properly approve or breaches the terms of the agreement, Monopoly has already agreed with Hawthorne, that's not Hawthorne's call anymore. It's Hyatt's call. So Hyatt has the responsibility. They get to exercise all their discretion without having any responsibilities. Okay, that doesn't mean Hyatt is a party to a contract with your client. Thank you. Thank you. We will be in recess until tomorrow morning.